**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **Darion Dent**<br><br>***Plaintiff,***<br><br>v.<br><br>**Coal Brick Oven South Carolina, Inc. d/b/a Grimaldi's Pizzeria, and** Grimaldi's Coal Brick-Oven Pizzeria, Inc. d/b/a **Grimaldi's Pizzeria,**<br><br>***Defendants.*** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **C.A. No.**<br><br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

COMES NOW Plaintiff Darion Dent ("Plaintiff" or "Dent"), by and through his undersigned counsel, and respectfully submits this Complaint against Defendant Coal Brick Oven South Carolina, Inc. ("CBOSC") and Defendant Grimaldi's Coal Brick-Oven Pizzeria, Inc. ("Grimaldi's Inc."), each doing business as Grimaldi's Pizzeria (collectively, "Defendants"), for race discrimination, racially hostile work environment, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and alleges as follows:

**PARTIES**

1. Plaintiff Darion Dent is an African-American male and a citizen and resident of the State of South Carolina.

2. Defendant Coal Brick Oven South Carolina, Inc. ("CBOSC") is a South Carolina corporation that employed Plaintiff at the Grimaldi's Pizzeria located at 1244 Belk Drive, Mount Pleasant, South Carolina. CBOSC paid Plaintiff's wages and identified itself as his employer on his 2025 Form W-2 and contemporaneous payroll statements.

3. Defendant Grimaldi's Coal Brick-Oven Pizzeria, Inc. ("Grimaldi's Inc.") is the corporation expressly identified by counsel for the responding employer in the May 12, 2026 position

statement submitted in response to Plaintiff's EEOC charge. In that submission, counsel represented that it acted for Grimaldi's Inc., referred to that entity as the "Company," and described its human-resources investigation, employment policies, disciplinary actions, and Plaintiff's termination. Upon information and belief, Grimaldi's Inc. exercised or shared control over material terms and conditions of Plaintiff's employment.

4. Upon information and belief, CBOSC and Grimaldi's Inc. were Plaintiff's employers or joint employers insofar as each exercised or shared control over his supervision, scheduling, discipline, workplace complaints, or termination. Their respective employment responsibilities, including the corporate identity of the entity directing human-resources decisions, are matters substantially within Defendants' possession.

5. At all times relevant to the Title VII claims, Defendants were employers within the meaning of 42 U.S.C. § 2000e(b), including the requirement of fifteen or more employees for each working day in twenty or more calendar weeks in the relevant current or preceding calendar year, whether individually or to the extent the facts establish an applicable integrated-employer relationship.

6. At all times relevant hereto, the managers identified below acted as agents of one or both Defendants with respect to Plaintiff's work, schedule, discipline, and continued employment. Manager Amber Burt, who is white, exercised workplace authority by directing Plaintiff to clock out and go home; Charlotte Testerman, whom the employer identified as its General Manager, fired Plaintiff. Plaintiff alternatively alleges employer responsibility based on management's actual notice of racial harassment and failure to take prompt remedial action reasonably calculated to end it.

**JURISDICTION AND VENUE**

7. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1981a; and 42 U.S.C. § 1988. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper in the United States District Court for the District of South Carolina under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in this District. Venue is also proper for the claims under 42 U.S.C. § 1981 pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to those claims occurred in Mount Pleasant, Charleston County, South Carolina.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2025-02126, signed January 9, 2026. The Charge, filed by Plaintiff acting *pro se* at the time, named "Grimaldi's Coal Brick and oven Pizzeria" at 1244 Belk Drive, Mount Pleasant, South Carolina, and asserted discrimination based on race and retaliation, including allegations concerning racial slurs, unequal enforcement of workplace requirements, and Plaintiff's July 20, 2025 termination.

10. On July 14, 2026, the EEOC issued a right to sue letter. Plaintiff files this action within ninety days of receipt.

11. Plaintiff has satisfied all conditions precedent and administrative prerequisites applicable to his Title VII claims. The Charge identified the Grimaldi's restaurant by its operating name and location; the employer responded through counsel during the EEOC proceedings, submitting a position statement purporting to speak on behalf of Grimaldi's Inc. concerning Plaintiff's employment. Plaintiff's claims under 42 U.S.C. § 1981 do not require EEOC exhaustion.

**FACTUAL ALLEGATIONS**

12. CBOSC hired Plaintiff on or about August 23, 2024 to work at the Grimaldi's Pizzeria restaurant located at 1244 Belk Drive, Mount Pleasant, South Carolina.

13. Plaintiff worked as a prep cook and dishwasher. His duties included washing dishes, preparing and cutting vegetables and other ingredients, preparing desserts, and working the salad station.

14. Plaintiff initially earned approximately $18.00 per hour and later received a raise to $20.00 per hour, as confirmed by his 2025 payroll records. He worked approximately forty hours per week.

15. Dent worked for Defendants in exchange for hourly wages. The racial discrimination, harassment, and retaliation alleged herein impaired his enjoyment of the benefits, privileges, terms, and conditions of that relationship, including compensation and continued employment.

16. Defendants allege subpar workplace conduct and adherence to food-safety requirements by Dent. Plaintiff disputes that such matters supplied the true reason for the challenged reductions in work opportunities and his termination, but rather are pretext.

17. James Webster, a white male, was a manager. Plaintiff's managers also included Abraham ("Abe") Murray, a black male; Amber Burt ("Burt"), a white female manager; Travis, a Black male manager; and Charlotte Testerman ("Testerman"), a white female whom the employer identified as its General Manager and who informed Plaintiff of the termination decision.

**Racial Harassment and Plaintiff's Complaints**

18. On June 27, 2025, at approximately 2:31 p.m., Plaintiff was preparing his station while managers and employees were discussing a broken freezer. Plaintiff made a comment to the effect that he could fix the freezer.

19. In the presence of Plaintiff, Abraham, and other employees, manager Burt said to Dent "Y'all [N-word plural] can't fix the cooler."

20. Plaintiff immediately objected to Burt's racial slur and told her that she had to show him respect. Rather than apologize or correct her conduct, Burt became angry and confronted him. Burt directed Dent to clock out and go home after he objected to the racial insult.

21. In late September or early October 2025, Burt told employees at work, including Abraham Murray, she was going to have her boyfriend, a Hell's Angel, hurt Dent.

22. Plaintiff asked for a grievance or complaint form. Plaintiff was taken into an office by Abraham and prepared a written statement about the incident. Plaintiff also discussed Burt's use of the racial slur with Abraham, separately from the contents of the written statement.

23. While assisting Plaintiff with his written statement concerning the June 27, 2025 incident, manager Abraham ("Abe") Murray instructed Plaintiff not to include Burt's use of the N-word, stating, in substance, that including the racial slur might "stir up trouble for both of them." Plaintiff followed Murray's instruction and omitted the racial slur from that written statement. That omission did not reflect a withdrawal of Plaintiff's objection to the racial harassment. Murray had been present when Burt used the racial slur, and Plaintiff had immediately objected to it.

24. Within days of the June 27 incident, Plaintiff spoke by telephone with manager Brian and specifically reported that Burt had called him the N-word. Brian told Plaintiff that Plaintiff and Burt would be separated and would not be scheduled to work together.

25. Plaintiff opposed racial discrimination and harassment by immediately objecting to Burt's racial slur, discussing the incident with Murray, and specifically reporting Burt's use of the N-word to manager Brian. The manager's use of that racial epithet toward Black employees, followed by sending Dent home from his shift after he objected, and cutting his hours, was unlawful racial discrimination and harassment. Management had actual notice via Murray and Plaintiff's subsequent oral reports, notwithstanding the omission of the racial slur from his written statement.

26. On or about July 2, 2025, despite management's representation that Plaintiff and Burt would be separated, Burt appeared in the back of the restaurant near Plaintiff and said "yeah [N-word], you thought I was going to be gone."

27. Plaintiff again reported the incident, including to manager Abraham, and was permitted to leave for the remainder of the shift.

28. In July, 2025, Plaintiff participated in management discussions and a meeting concerning the confrontation with Burt, Charlotte Testerman and Abraham Murray. Plaintiff reported Burt's racial slurs to Testerman and explained that he could not effectively work with Burt while she continued directing racial abuse toward him. The employer acknowledges a July 7, 2025 meeting between Testerman and Plaintiff concerning its investigation. Testerman knew of Dent's opposition to racial harassment before disciplining and terminating him.

29. After Plaintiff complained about the repeated racial slurs, Testerman told Plaintiff, in substance, that he would have to work with Burt or leave. Plaintiff alleges the racial harassment recurred despite management's earlier assurance that the two would be separated.

30. Burt's racial epithets and accompanying conduct were humiliating, abusive, and subversive of Dent's continued employment. He immediately objected, repeatedly sought management's assistance, and experienced stress and anxiety for which he sought medical treatment. The racial insults, order to clock out after his objection, recurrence of racial abuse after his report, and management's insistence that he continue working with Burt interfered with his ability to work without racial humiliation and created an environment that Plaintiff perceived, and a reasonable person in his position would perceive, as racially hostile and abusive.

31. Upon information and belief Defendants knew of the invidious racial harassment through Murray's presence during the first incident, Plaintiff's oral report to Brian, and his subsequent communications with Murray and Testerman. Despite that notice, the harassment recurred after

management promised to separate Plaintiff and Burt. Testerman then required Plaintiff to continue working with Burt despite his reports of racial abuse. Independently of whether Burt possessed supervisory authority sufficient to impose vicarious liability, Defendants failed to take prompt remedial action reasonably calculated to end the harassment.

32. Payroll records corroborate a substantial decrease in Plaintiff's hours worked subsequent to his complaints. For the biweekly period May 19 through June 1, 2025, Plaintiff worked 80.38 hours; for June 16 through June 29, before his June 27 complaint and immediately afterward, he worked 51.56 hours; and for June 30 through July 13, following his complaint, he worked only 27.80 hours, including 4.70 hours in the second week of that period. Plaintiff alleges that after his complaints management reduced his hours and subjected him to heightened scrutiny.

**33.** On October 6, 2024, white manager James Webster entered the kitchen and used the N-word -- asking whether anyone wanted to fight. James texted Plaintiff later that day to ask whether he wanted to fight. Plaintiff did not report that incident at the time because he feared retaliation. Webster also used racist language at work, including the N word, in connection with rap lyrics.

**Discriminatory and Retaliatory Termination**

34. On July 20, 2025, less than one month after Plaintiff first complained about Burt's racial slur, Testerman subjected Plaintiff, an African-American employee and member of a protected class, to heightened scrutiny and selectively enforced hairnet and glove requirements against him, while allowing similarly situated white employees outside Plaintiff's protected class to work without comparable scrutiny, criticism, or discipline. In particular, while she was working with food, and not wearing gloves or hairnet, Testerman told Dent "[N-word plural] have to wear hairnets and gloves," Testerman was the manager who shortly thereafter terminated Plaintiff.

35. Plaintiff questioned Testerman about whether white employees were likewise required to wear hairnets and gloves and were disciplined for similar alleged violations. Defendants selectively enforced workplace requirements against Defendant, a member of a protected class.

36. Testerman presented Plaintiff with a disciplinary write-up on July 20, 2025. During the ensuing exchange, which Plaintiff recorded, Testerman told Plaintiff words to the effect of, "take this write-up, get out of my face," and then terminated his employment. At the time Charlotte confronted Plaintiff about his failure to wear a hairnet, Charlotte herself was not wearing a hairnet. Plaintiff pointed out that Charlotte was not wearing a hairnet and questioned why the requirement was being selectively enforced against him. Rather than address that disparity, Charlotte terminated Dent.

37. Defendants' asserted reliance on food-safety and attendance issues was pretextual. Testerman personally knew of Plaintiff's complaints of racial harassment before disciplining and terminating him on July 20, 2025, less than one month after his June 27 complaint. These circumstances support an inference that race and Plaintiff's protected opposition, rather than Defendants' stated reasons, motivated the challenged actions.

38. Upon information and belief, similarly situated non-Black employees were not subjected to the same level of scrutiny or immediate termination for comparable hair-restraint, grooming, uniform, or workplace-rule issues.

39. Plaintiff's race was a but-for cause of the racial harassment alleged herein. Rce was a motivating factor in the challenged disparate treatment and a but-for cause of the disparate treatment asserted under 42 U.S.C. § 1981. Plaintiff's protected opposition to racial discrimination and harassment was a but-for cause of the retaliatory employment actions alleged herein. Testerman, used a racial slur towards Dent on July 20, 2025, personally made the decision to discipline and terminate Plaintiff after receiving notice of his prior complaints.

40. After Plaintiff's termination, a no-trespass notice was issued concerning the restaurant, and law enforcement contacted Plaintiff.

**Damages**

41. As a direct and proximate result of Defendants' conduct, Plaintiff lost wages and employment opportunities. Plaintiff remained unemployed from his termination on July 20, 2025 until obtaining other employment in or about November 2025, and he has continued to suffer economic loss.

42. The racial harassment and retaliatory conduct also caused Plaintiff substantial emotional distress, anxiety, humiliation, embarrassment, sleeplessness, and other non-economic harm. Plaintiff sought medical treatment on or about June 28, 2025 for stress and anxiety and was prescribed medication for anxiety symptoms.

43. Defendants' conduct was intentional and was undertaken with malice and/or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to all available compensatory and punitive damages.

**COUNT I**
**TITLE VII - RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**

44. Plaintiff incorporates the foregoing factual allegations concerning the parties, jurisdiction, administrative proceedings, employment, discrimination, retaliation, and damages.

45. During Plaintiff's employment, Defendants, through their managers and agents, subjected Plaintiff to racial harassment because of his race, in violation of Title VII, 42 U.S.C. § 2000e et seq. Plaintiff's race was a but-for cause of the racial harassment.

46. The harassment was unwelcome and included Burt's and other managers repeated use of the N-word toward Plaintiff, Burt's order that he clock out after he objected, Burt's later racial taunt after management received his complaint, and the racial statement by Testerman on the day she terminated Plaintiff. Considering its severity, humiliating character, recurrence, workplace authority,

and effect on Plaintiff's work, the conduct was sufficiently severe or pervasive to alter his employment conditions and create an objectively and subjectively abusive environment.

47. The harassment is imputable to Defendants through their managers' conduct and employment authority. Independently of whether Burt possessed supervisory authority sufficient to impose vicarious liability, management knew of the harassment through Murray's presence at the first incident and Plaintiff's reports to Brian, Murray, and Testerman, yet failed to take prompt remedial action reasonably calculated to end it.

48. Defendants allowed and/or created a racially hostile and abusive workplace. Plaintiff immediately objected to the racial slurs, repeatedly sought management's assistance, and sought treatment for stress and anxiety.

49. Defendants discriminated against Plaintiff because of his race in the terms, conditions, and privileges of employment by reducing his paid work opportunities, selectively enforcing workplace rules, disciplining him, and terminating his employment. Plaintiff's race was a motivating factor in those challenged employment decisions.

50. Defendants' asserted reason for the challenged discipline and termination was a pretext for racial discrimination.

51. Plaintiff suffered harm and damages directly and proximately caused by Defendants' unlawful discrimination and hostile work environment, in an amount to be proven at trial by jury.

52. Defendants intentionally and/or with reckless indifference engaged in the discriminatory practices described herein, contrary to Plaintiff's federally protected rights, and Plaintiff is entitled to compensatory and punitive damages and all other remedies available under Title VII and 42 U.S.C. § 1981a.

## COUNT II
## TITLE VII - UNLAWFUL RETALIATION

53. Plaintiff incorporates the foregoing factual allegations concerning the parties, jurisdiction, administrative proceedings, employment, discrimination, retaliation, and damages.

54. Plaintiff engaged in protected opposition by immediately objecting to Burt's racial slur, orally reporting racial harassment to Murray and Brian, and reporting the repeated slurs to Testerman. The racial conduct he opposed was unlawful. His oral opposition remained protected notwithstanding the omission of the slur from his written statement at Murray's instruction.

55. Defendants knew of Plaintiff's protected activity through the management reports described above. Testerman personally knew of his complaints before disciplining and terminating him. Following Plaintiff's opposition, Defendants materially reduced his hours, used disparate/heightened scrutiny, and terminated Dent on July 20, 2025.

56. Plaintiff's protected opposition to racial discrimination and harassment was a but-for cause of the retaliatory adverse actions alleged herein. Absent that protected opposition, Defendants would not have taken those actions against Plaintiff. Termination, reduction of paid work opportunities, and the other materially adverse actions alleged herein would dissuade a reasonable employee from making or supporting a complaint of discrimination. The heightened scrutiny and criticism also form part of the factual context of the retaliatory discipline and termination.

57. Plaintiff suffered harm and damages directly and proximately caused by Defendants' unlawful retaliation, in an amount to be proven at trial by jury.

58. Defendants intentionally and/or with reckless indifference engaged in unlawful retaliation against Plaintiff, and Plaintiff is entitled to compensatory and punitive damages and all other remedies available under Title VII and 42 U.S.C. § 1981a.

## COUNT III
## 42 U.S.C. § 1981 - RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

59. Plaintiff incorporates the foregoing factual allegations concerning the parties, jurisdiction, administrative proceedings, employment, discrimination, retaliation, and damages.

60. Plaintiff's employment was a contractual relationship protected by 42 U.S.C. § 1981. That statute guarantees Plaintiff the same right to make and enforce contracts and to enjoy the benefits, privileges, terms, and conditions of employment as is enjoyed by white citizens, including in an at-will employment relationship.

61. Defendants intentionally subjected Plaintiff to unwelcome racial harassment, including repeated racial epithets by Burt and Testerman, accompanying assertions of workplace authority, and conduct following his complaints as described above. The harassment was sufficiently severe or pervasive to alter Plaintiff's employment conditions and create an environment that Plaintiff actually perceived, and a reasonable person in his position would perceive, as hostile and abusive. The harassment is imputable to the employer Defendants through their managers' conduct and authority and, alternatively, their actual notice and failure to take prompt remedial action reasonably calculated to end it.

62. But for Plaintiff's race, he would not have been subjected to the racial harassment alleged herein. That harassment impaired his enjoyment of the benefits, privileges, terms, and conditions of his contractual employment relationship.

63. Plaintiff's exchange of labor for hourly wages created a contractual employment relationship protected by 42 U.S.C. § 1981. Defendants intentionally discriminated against him because of his race in the enjoyment of that relationship by reducing paid work opportunities, selectively enforcing workplace rules, disciplining him, and terminating his employment.

64. But for Plaintiff's race, Defendants would not have subjected him to the discriminatory employment actions alleged herein. Plaintiff alleges intentional racial interference with his contractual

employment rights based on the racial conduct, disparate treatment, management knowledge, and circumstances of discipline and termination described in the factual allegations. This claim is asserted independently of, and alternatively to, his claims of retaliation for protected opposition.

65. Plaintiff suffered harm and damages directly and proximately caused by Defendants' violations of 42 U.S.C. § 1981, including lost wages, emotional distress, humiliation, and other economic and non-economic losses.

66. Defendants' conduct was intentional, willful, wanton, and undertaken with malice and/or reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages.

## COUNT IV
## 42 U.S.C. § 1981 - UNLAWFUL RETALIATION

67. Plaintiff incorporates the foregoing factual allegations concerning the parties, jurisdiction, administrative proceedings, employment, discrimination, retaliation, and damages.

68. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he opposed and complained about racial discrimination and harassment affecting the terms and conditions of his contractual employment relationship. His opposition included the immediate objection and specific oral reports described above, and was based on a sincere and reasonable belief that the racial conduct was unlawful.

69. With knowledge of that protected opposition through their managers, including Testerman's personal knowledge before the termination decision, Defendants retaliated against Plaintiff by reducing his paid work opportunities, subjecting him to selective discipline and disparate standards as set out above, and then firing him in close temporal proximity to Dent's complaints. The heightened scrutiny and criticism alleged above form part of the factual context of that retaliation. The materially adverse actions would dissuade a reasonable employee from opposing racial discrimination.

70. But for Plaintiff's protected complaints of race discrimination and racial harassment, Defendants would not have taken the retaliatory adverse actions alleged herein.

71. Plaintiff suffered damages as a direct and proximate result of Defendants' retaliation, including lost wages, emotional distress, humiliation, embarrassment, and other economic and non-economic damages.

72. Defendants' retaliatory conduct was intentional, willful, wanton, and undertaken with malice and/or reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages.

## PRAYER FOR RELIEF

73. WHEREFORE, Plaintiff respectfully prays for judgment against Defendants for all legal and equitable relief available under Title VII and 42 U.S.C. § 1981, including back pay, reinstatement or front pay as appropriate, compensatory damages for emotional distress and other economic and non-economic injuries, punitive damages, prejudgment and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k), and such other and further relief as this Court deems just and proper, without duplicate recovery for the same injury.

## JURY DEMAND

74. Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 10, 2026

Respectfully submitted,

*s/ Ben Le Clercq*
Ben Whaley Le Clercq
(S.C. Bar #65754, U.S. District Court # 7453)
David D. Ashley
(S.C. Bar #76206, U.S. District Court #10220)
Le Clercq Law Firm
708 South Shelmore Blvd. #202
Mount Pleasant, SC 29464
Office (843) 722-3523
Cell (843) 345 1439
Ben@LeClercqLaw.com
David@LeClercqLaw.com
***Attorneys for the Plaintiff***

*s/Robert M. Turkewitz*
Robert M. Turkewitz
Law Office of Robert M. Turkewitz, LLC
(S.C Bar #: 011589, U.S. District Court #: 4902)
St. Andrews Law Center
768 St. Andrews Blvd.
Charleston, SC. 29407
Office (843) 628-7868
Cell (843) 696-4549
Fax (843) 277-1438
Rob@rmtlegal.com
www.RMTLegal.com
***Attorneys for the Plaintiff***

**VERIFICATION**

I, Darion Dent, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Complaint and that the factual allegations contained therein are true and correct. Executed on the date stated below.

Darion Dent

Darion Dent

Date: 10/10/26

**Signature:** Darion Dent (Oct 10, 2026 12:46:46 EDT)

**Email:** dentdarion27@gmail.com